UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sherry Toomey,

        Plaintiff,

v.                                      Case No. 14-cv-3249 (JNE/TNL)
                                      ORDER

Keith Dahl,

        Defendant.


      Plaintiff Sherry Toomey is a resident of Minnesota.  Defendant Keith Dahl is a resident of Alaska.  Plaintiff and Defendant were allegedly romantically and professionally involved from 2003 until 2014.  Plaintiff filed a lawsuit in state court alleging misrepresentation, breach of fiduciary duty, breach of contract, promissory estoppel, unjust enrichment, and conversion. Plaintiff seeks damages and an order establishing a trust over Defendant's real property with a portion of the proceeds from the sale of that property distributed to Plaintiff.  Defendant removed the action to this Court and filed a motion to transfer/change venue and a motion to dismiss for lack of personal jurisdiction and for failure to state a claim.  This matter is before the Court on these motions.

      For the reasons set forth below, this Court denies Defendant's motion to transfer/change venue, denies Defendant's motion to dismiss for lack of personal jurisdiction, and grants in part and denies in part Defendant's motion to dismiss for failure to state a claim.

## BACKGROUND

      The following facts are alleged in the complaint.  In 2003, Toomey and Dahl began seeing each other romantically.   On September 20, 2003, Dahl asked Toomey to marry him and gave her an engagement ring.  Dahl asked Toomey to relocate from Minnesota to Hoquiam,

Washington to help prepare Dahl's home for sale and to manage his business investments, which included real estate and timber.  In December 2003, Toomey relocated to Hoquiam, Washington.

Dahl told Toomey "that she would financially benefit if she aided him in the management of" his investments.  Complaint ¶¶ 54, 63.  Dahl also "represented to Toomey that if she would advance funds to help him pay business expenses, she would financially benefit by either being reimbursed in full or sharing in the profits earned from" Dahl's investments.  Complaint ¶ 38.  Toomey, who had been a mortgage underwriter in Minnesota, began managing Dahl's business investments.  Occasionally, Toomey advanced her own funds to cover taxes, utility payments, and credit card charges incurred by Dahl for his business investments.

Toomey moved back to Minnesota in May 2006, when Dahl began spending most of his time in Alaska.  With Dahl's approval, she continued to manage his business investments from Minnesota.  Dahl traveled to Minnesota to visit Toomey and to conduct business.  Toomey also advanced funds for Dahl's expenses on at least one occasion while she was working for Dahl in Minnesota.

Dahl represented that he would pay Toomey at the conclusion of a trial in an unrelated matter in which he expected to receive money as part of a negotiated settlement.  In January 2014, Toomey presented Dahl with an itemization of all the money she had advanced and demanded payment of $166,677.94.  The trial in the unrelated matter concluded in January 2014, and Dahl did not compensate Toomey.  Toomey filed this lawsuit in state court on July 2, 2014.  Dahl removed the action to this Court, where Dahl filed a motion to transfer/change venue and a motion to dismiss.

## DISCUSSION

### I.   Motion to Transfer Venue

Defendant maintains that venue is improper under 28 U.S.C. § 1391.  Defendant moves

to change venue from this Court to the United States District Court, District of Alaska under 28

U.S.C. § 1406(a).  Alternatively, Defendant moves to change venue to Alaska under 28 U.S.C. §

1404(a).

**A.  Section 1391**

Defendant first argues that venue is improper under section 1391.  However, Supreme

Court precedent and the body of law interpreting that precedent clearly establish that section

1391 does not apply to actions removed to federal court.  *Polizzi v. Cowles Magazines, Inc.*, 345

U.S. 663, 665-66 (1953) ("Section 1391(a) limits the district in which an action may be

'brought'" but an action is not "brought" in district court when it is "brought in a state court and

removed to the District Court.");  *Collin Cnty. v. Siemens Business Servs., Inc.*, 250 Fed. App'x.

45, 52 (5th Cir. 2007) ("section 1441, and not section 1391, governs venue in removal cases");

*Lundahl v. Public Storage Management, Inc.*, 62 Fed. App'x. 217, 218-19 (10th Cir. 2003)

("removal venue is governed by [section] 1441(a)" and thus "dismissal based on § 1391(b) was

improvidently granted");  *Global Satellite Communication Co. v. Starmill U.K. Ltd.*, 378 F.3d

1269, 1271 (11th Cir. 2004) ("Section 1441(a), and not the ordinary federal venue statute, 28

U.S.C. § 1391, governs venue in removed cases.");  *Kerobo v. Southwestern Clean Fuels, Corp.*,

285 F.3d 531, 534 (6th Cir. 2002) ("Venue in removed cases is governed solely by § 1441(a).");

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998) ("the

removal statute, and not the ordinary venue statute, 28 U.S.C. § 1391, governs venue in removed

cases");  *Lambert v. Kysar*, 983 F.2d 1110, 1113 n. 2 (1st Cir. 1993) ("the venue of a removed

action is not governed by § 1391, but by 28 U.S.C. § 1441(a)");  *see also* 14D Wright & Miller,

Federal Practice and Procedure: Jurisdiction, § 3806 ("The general venue statute, Section 1391, does not apply in actions removed to federal court from state court.").

Because this action was removed from state court, section 1391 does not apply.

**B.  Section 1406 and Personal Jurisdiction**

Sections 1406 and 1404, which govern the transfer of venue, apply to actions removed to federal court.  28 U.S.C. § 1390(c) ("This chapter shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts.").  Section 1406(a) states that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Defendant argues that venue is improper under section 1406(a) because this Court lacks personal jurisdiction over Defendant and that, in the interests of justice, this Court should transfer the action to Alaska, where proper venue and personal jurisdiction exist.  *See Thompson v. Ecological Science Corp.*, 421 F.2d 467, 470 n.4 (8th Cir. 1970) ("Even if personal jurisdiction had not been obtainable in Arkansas, a transfer under 28 U.S.C. § 1406 might have been a preferable alternative to dismissal."); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (holding that section 1406(a) grants district courts the power to transfer cases for lack of personal jurisdiction as well as for improper venue).

To establish personal jurisdiction, Plaintiff must provide "sufficient facts . . . to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state."  *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474 (8th Cir. 2012) (citations omitted).  Plaintiff's showing "must be tested, not by the pleadings alone, but by the affidavits

4

and exhibits presented with the motions and in opposition thereto." *Id.* at 474 n.3 (citations omitted). The Court must "look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citation omitted). Plaintiff must show that Minnesota's long-arm statute has been satisfied and that exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment. *See Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 613 (8th Cir. 1998). These two inquiries become one because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause. *See Guinness*, 153 F.3d at 614. Due process requires that Defendant have sufficient "minimum contacts with [Minnesota] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Daimler AG v. Bauman*, ––– U.S. ––––, 134 S.Ct. 746, 754 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Plaintiff can establish personal jurisdiction by showing either general personal jurisdiction or specific personal jurisdiction over Defendant. "Specific jurisdiction is jurisdiction over causes of action arising from or related to the defendant's actions in the forum state." *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 n. 4 (8th Cir. 1995). "General jurisdiction refers to the power of a state to adjudicate any cause of action regardless of where the cause of action arose." *Id.* General jurisdiction "requires affiliations so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler AG*, 134 S.Ct. at 758 n.11 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. ––––, 131 S.Ct. 2846, 2851 (2011)) (internal quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 131 S.Ct. at 2853-54. Whether a forum state may assert specific personal

jurisdiction over a nonresident defendant depends on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)). The "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, ⸻U.S. ⸻, 134 S. Ct. 1115, 1121-22 (2014). The analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

The Eighth Circuit has combined the inquiry into general and specific personal jurisdiction through a five factor test that analyzes: (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties. *See Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014). The first three factors are of primary importance, while the last two factors are considered secondary. *Id.* The first two factors relate to general jurisdiction, while the third factor applies only to a specific jurisdiction analysis and is immaterial for general jurisdiction. *See Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008).

   *1. General Personal Jurisdiction*

To support a finding that Defendant's contacts with Minnesota are sufficient to establish general personal jurisdiction under the first two factors, Toomey alleges that Dahl had the following contacts with Minnesota: he was in daily contact with Toomey regarding business issues; Dahl made many trips to Minnesota after Toomey moved to Minnesota; when Dahl

visited Minnesota, he would usually hand Toomey documents and request that she maintain them and deal with issues related to them on his behalf; Toomey managed Dahl's twenty-six real estate properties from Minnesota; Toomey managed Dahl's Wisconsin cabin and the care of his ailing mother from Minnesota; and Dahl used Toomey's Minnesota mailing address for out-of-state bank accounts and for utilities such as phone and cable.  Toomey Decl. ¶¶ 6-16.

These allegations and their accompanying exhibits show that Defendant had extensive contacts with Plaintiff but not necessarily that Defendant had extensive contacts with the state of Minnesota itself.  There are no allegations that Defendant resides in Minnesota or owns property in Minnesota, and there is no evidence that Minnesota was the principal place from where he conducted his business.  On these facts, this Court does not have general personal jurisdiction over Defendant.  *See Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (no general personal jurisdiction in Missouri where defendant "did business almost exclusively from her Colorado home, except for infrequent [business] trips to Missouri"); *Johnson v. Woodcock*, 444 F.3d 953, 956-57 (8th Cir. 2006) (evidence that nonresident party corresponded with Minnesota resident and collaborated with a resident and had a publishing relationship with another did not establish general jurisdiction); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074-75 (8th Cir. 2004) (no general personal jurisdiction over corporate defendants that had no offices, inventory, real estate, bank accounts, or employees in the state).

2. *Specific Personal Jurisdiction*

To support a finding of specific personal jurisdiction, Plaintiff argues that Defendant's contacts with Plaintiff in Minnesota were specifically related to the operation of the business investments Toomey was managing, which is directly relevant to Plaintiff's claims against

Defendant.  Defendant argues that none of the claims relates to conduct in Minnesota and actions relating to the litigation occurred outside Minnesota.

One factor weighing against personal jurisdiction in Minnesota is that the parties' contractual or quasi-contractual relationship may have been substantially formed in Washington, where Plaintiff first began managing Defendant's business investments and advancing funds. Courts are more likely to have specific personal jurisdiction over a defendant in a contractual dispute when the contract was negotiated and formed in the forum state.  *See Dairy Farmers of America*, 702 F.3d at 478 (8th Cir. 2012) (no personal jurisdiction in breach of contract case in part because no prior negotiations occurred in the state); *Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d 519, 521, 525 (8th Cir. 1996) (no personal jurisdiction over Singapore-based corporation in part because all of the face-to-face meetings involving the agreement took place in Singapore); *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 525 (8th Cir. 1992) (no personal jurisdiction in contract case where contract was "negotiated, drafted, presented and executed" out of the forum).

However, a factor that weighs in favor of personal jurisdiction is the alleged fact that much of the work that Toomey performed for Dahl was in Minnesota.  The gist of Plaintiff's complaint is that Defendant owes Plaintiff for the business management services she performed and for the funds she advanced.  Most of the services for which Toomey seeks compensation occurred in Minnesota.  Plaintiff alleges that she began working as the business manager for Defendant in December 2003 and continued working for him until January 2014.  Complaint ¶¶ 12, 32, 34.  From May 2006 through 2014, Plaintiff has resided in Minnesota.  *Id.* at ¶ 26.  Thus, for about seven-and-a-half of the approximately ten years at issue, Plaintiff was working for Defendant in Minnesota.  The portion of Plaintiff's advanced funds made from Minnesota is

unclear from Plaintiff's averments.  Plaintiff alleges that from "early 2005 and continuing until 2011, [she] advanced funds . . . to cover Dahl's expenses."  Toomey Decl. ¶ 19.  During most of this time, Plaintiff lived in Minnesota.  The complaint lists six specific instances as examples of when Toomey advanced funds.  Complaint ¶¶ 20-23.  Five of them occurred during the time Plaintiff was living in Washington, and one of them occurred during the time she was living in Minnesota.  Thus, from the examples in the complaint, it appears that some but not all of the advances occurred outside of Minnesota.

In *Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc.*, 65 F.3d 1427 (8th Cir. 1995), the court held that personal jurisdiction existed in Minnesota for a breach of contract case because the defendant had twice visited Minnesota in relation to the contractual work, had made numerous mail and telephone contacts to the state, and "90 percent of the work was performed in Minnesota."  *Id.* at 1433-34.  Like the defendant in *Wessels*, Dahl has traveled to Minnesota in connection with his relationship with Plaintiff, he has made numerous phone calls to Plaintiff in Minnesota, and much of the work that Plaintiff performed for Dahl was in Minnesota.

Another factor that weighs in favor of personal jurisdiction is that Defendant's allegedly false statements were directed at Plaintiff's behavior in Minnesota.  While Defendant initially made those statements in another state, Plaintiff alleges that he approved of her decision to relocate the management of his investments to Minnesota.  It is reasonable to infer from Defendant's consent that both parties reasonably expected that the same promises and terms that were in effect in Washington would apply to their relationship after Plaintiff moved to Minnesota.  In particular, the fact that Plaintiff advanced money to Defendant after she moved back to Minnesota, and that Defendant accepted the funds, suggests that any earlier promises made in Washington relating to the advancement of funds were still in effect.  Thus, it is

reasonable to infer that Defendant's allegedly false statements became directed at Plaintiff in Minnesota after she returned to the state.

False statements directed at the forum state, coupled with physical visits and communications to the state, were enough to establish personal jurisdiction in *Dudley v. Dittmer*, 795 F.2d 669 (8th Cir. 1986). In *Dudley*, Dudley was a commodities trader working for a brokerage firm in its Springdale, Arkansas office. *Id.* at 670. The defendant, Dittmer, was the president of the firm and was not a resident of Arkansas. *Id.* at 670, 672. Dudley alleged that he was harmed when "he took the long positions [on commodities] in reliance on fraudulent representations by Dittmer," which Dittmer made to traders in the Springdale, Arkansas office to manipulate the market. *Id.* at 671. Dittmer's contacts with Arkansas were "numerous telephone calls" to the office where Dudley worked and "two visits to Arkansas to meet with brokers in the Springdale office." *Id.* at 672. The court held that "[b]ased on these contacts, and more generally, on Dittmer's purposeful direction of activities at, and establishment of continuing relationships with, Arkansas residents, out of which this litigation arises, we do not believe it is unfair to require Dittmer to defends this suit in Arkansas." *Id.*

There are several similarities between the matter before the Court and *Dudley*. In both cases, the plaintiff worked for and took direction from the defendant. The defendant allegedly made multiple phone calls and visits to those working for him in the forum state. The defendant received some value through those contacts. The plaintiff's alleged harm arose out of the services that the plaintiff performed in the forum state for the defendant and in reliance on the allegedly false statements made by the defendant.

Overall, the alleged facts here show that Defendant established a continuing relationship with a Minnesota resident. He directed activities and statements to Minnesota to induce Plaintiff

to perform services for him and advance funds to him from Minnesota.  The litigation arises out of these activities and statements.  Minnesota has an interest in protecting its residents from out-of-state defendants who reap the benefit of services and funds provided from Minnesota in reliance on allegedly false statements and promises made to Minnesota residents.  While Defendant would undoubtedly be inconvenienced by litigating in Minnesota, he is not incapable of traveling here, as shown by the multiple trips he made to Minnesota to conduct business and visit Plaintiff—trips that contributed to the rise of this litigation.  Furthermore, convenience does not favor Defendant's home state, Alaska, because Plaintiff would be inconvenienced to litigate there at least as much as Defendant would be inconvenienced to litigate here.  Based on these facts, this Court finds that Minnesota has personal jurisdiction over Defendant in this matter and venue is not improper under section 1406.

Defendant's reliance on *Westley v. Mann*, 896 F. Supp. 2d 775 (D. Minn. 2012) is unavailing.  In that case, this Court found no personal jurisdiction over defendants despite phone calls and emails into Minnesota and allegedly false statements to the Minnesota-based plaintiff that induced the plaintiff to wire money from Minnesota to Florida.  *Id.* at 781-85.  However, in *Westley*, the gist of the complaint was that the plaintiff had sent money to Florida to secure an interest in a property in Florida and the defendants wrongfully denied him access to that property.  *Id.* at 782, 793.  The court stated that "Minnesota has little interest in providing its citizens a forum for a dispute that has no connection to the state."  *Id.* at 792.  By contrast, Toomey's claims do not center on an out-of-state property but center on Dahl's alleged failure to send payments to Toomey in Minnesota for services and funds that she provided in significant part from Minnesota.

**C.  Section 1404**

Under section 1404, a district court may, in its discretion, transfer venue of a civil action to another district upon a motion from a party. When deciding a motion to transfer, a court must consider: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, courts are not limited to these factors and can make "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* The party seeking transfer must show that the balance of factors "strongly" favors the movant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F.Supp. 311, 315 (D.Minn. 1994). Section "1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient." *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 641 (D. Minn. 1996).

### 1. Convenience to the Parties

Defendant argues that convenience to the parties is a neutral factor because one party lives in Minnesota and the other in Alaska. Plaintiff argues that she has depleted her savings contributing to Defendant's business and it would be a hardship for her to litigate outside her home state. However, a "party who opposes a transfer on the ground of financial hardship must substantiate the claim." *von Brugger v. Jani-King of Minnesota, Inc.*, No. 13-cv-05, 2013 WL 2318147, at *3 (D. Minn. 28, 2013). Plaintiff provides no evidence of her hardship. Without evidence of hardship by either party, this Court finds this factor neutral.

### 2. Convenience to the Witnesses

The convenience of the witnesses is an important factor because it determines the "relative ease of access to sources of proof." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508

(1947).  This factor includes consideration of the number of essential non-party witnesses, their location, and the preference of the court for live testimony as opposed to depositions.  *See Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).  However, this factor "should not be determined solely upon a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts; the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover."  *Nelson v. Master Lease Corp.,* 759 F.Supp. 1397, 1402 (D. Minn. 1991).

Both parties have submitted lists of witnesses.  Predictably, most of Defendant's witnesses are in Alaska and most of Plaintiff's witnesses are in Minnesota.  Defendant's witnesses include family, friends, and business associates who he alleges are "familiar with [his] various business activities and operations, including those giving rise to the allegations in this action."  Dahl Decl. ¶ 10.  Plaintiff's witnesses include individuals who have "firsthand knowledge of [her] role with Dahl" and who "would have overheard telephone conversations" in which Plaintiff and Defendant discussed business matters.  Toomey Decl. ¶ 18.

Accessibility of records and documents is a related factor that courts consider.  *See Terra*, 119 F.3d at 696.  Toomey alleges that, when Dahl visited Minnesota, he would usually "hand [Toomey] documents and records related to the business investments [and] request that [Toomey] take care of maintaining the document or deal with the issues related to the document on his behalf."  Toomey Decl. ¶ 7.  Toomey argues that these documents, which are allegedly still in Minnesota, are evidence of the services that Toomey provided for Dahl.

It would be inconvenient for Plaintiff's witnesses to travel to Alaska and inconvenient for Defendant's witnesses to travel to Minnesota.  The presence of the documents in Minnesota

appears to weigh slightly in favor of Minnesota, but those documents could easily be sent to Alaska.  Thus, this Court finds this factor neutral.

      *3.  Location Where the Conduct Complained of Occurred*

Defendant argues that a consideration of the location where the conduct complained of occurred weighs in favor of a transfer to Alaska.

The complained of conduct is Defendant's failure to compensate Plaintiff for her services and advanced funds.  The alleged facts suggest that much of the complained of conduct occurred when the parties lived in Washington.  However, in 2006, Defendant began spending most of his time in Alaska and Plaintiff returned to Minnesota.  At this point, Defendant's failure to pay Plaintiff was an omission that occurred in Alaska and was directed at Plaintiff in Minnesota.

This factor may weigh most in favor of venue in Washington.  However, the factor is neutral between Plaintiff's choice of forum (Minnesota) and Defendant's preferred forum (Alaska) because the alleged conduct in Alaska was directed at Plaintiff in Minnesota.  *See Petters Co., Inc. v. Stayhealthy, Inc.*, No. 3-3210, 2004 WL 1630932, at *3 (D. Minn. July 7, 2004) (finding the location where the conduct complained of occurred a neutral factor because "the alleged fraudulent conduct [in California] was directed at [Plaintiff] in Minnesota").

      *4.  Interests of Justice*

The interest of justice factors includes considerations such as: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."  *Terra*, 119 F.3d at 696.  Defendant argues that factors two, four, and seven are relevant here.

The second factor, the plaintiff's choice of forum, weighs clearly in favor of Plaintiff.

Defendant argues that the fourth factor, the parties' abilities to enforce judgment, weighs in favor of a transfer to Alaska because the complaint seeks to have the Court put Defendant's real property into a trust, and the property that would be subject to a trust is not in Minnesota. Plaintiff acknowledges that the relevant property is in Washington, Wisconsin, North Dakota, and Alaska.

A judgment for recovery of money or property entered into in one district court may be registered in any other district. *See* 28 U.S.C. § 1963. If judgment were entered in favor of Plaintiff in the District of Minnesota, judgment may have to be registered in districts where Defendant owned property. If venue were transferred to Alaska, judgment would not have to be registered in a different district for the property at issue in Alaska, but judgment may still have to be registered in other districts for Defendant's property in those districts. In other words, transferring venue to Alaska may reduce by one the number of judgments that must be registered in different districts, but it may not eliminate the need for such registrations completely. As a result, this consideration weighs only slightly in favor of transfer to Alaska.

Finally, Defendant argues that the advantages of having a local court determine local law weigh in favor of Alaska because Alaska or perhaps Washington law will apply but not Minnesota law. Plaintiff argues that Minnesota law will apply and thus this consideration weighs in her favor. The parties have not fully briefed the choice of law issues in this matter. It is raised now as a factor in the transfer analysis and not as a separate choice of law analysis. *See Harley v. Minerals Technologies, Inc.*, No. 13-cv-954, 2014 WL 5017830, at * 5 (S.D.N.Y. Sept. 26, 2014) ("the choice-of-law analysis is more focused and differs from the change-of-venue analysis in which the plaintiff's choice of forum [is accorded] considerable deference") (citation and internal quotation marks omitted); *Metcalf v. Bay Ferries Ltd.*, No. 12-cv-40075,

2014 WL 4656883, at * 3 n.4 (D. Mass. Sept. 9, 2014) ("choice of law analysis is analyzed

separately and is distinct from the law applicable to motions for change of venue and forum non

conveniens").

Without undergoing a full choice of law analysis, it is difficult to determine which way

this consideration tilts.  However, two facts suggest the consideration does not weigh heavily in

Defendant's favor.  First, as discussed above, some of the complained of activity occurred in

Washington.  Thus, whether this matter is heard in Minnesota or Alaska, the sitting Court may

have to apply Washington—i.e., non-local—law.  Second, in his reply brief supporting his

motion to dismiss, Defendant concedes that, between Minnesota law and Alaska law, the

relevant "claims are substantively quite similar in both states."  Defendant's Reply to Motion to

Dismiss at 10.  Thus, it matters little whether a Minnesota court applies Alaska law in this matter

or an Alaska court applies Minnesota law because the relevant state laws are substantively

similar and will not appear foreign or unfamiliar.

Plaintiff has chosen to litigate this matter in Minnesota.  Defendant has not identified

factors or considerations sufficiently strong to disturb Plaintiff's choice of forum in favor of

Alaska.  Thus, this Court declines to transfer venue to Alaska under section 1404(a).

## II.    Motion to Dismiss

Defendant has moved to dismiss for lack of personal jurisdiction and for failure to state a

claim.  This Court finds that it has personal jurisdiction over Defendant for the reasons discussed

earlier.

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

a court must accept the facts alleged in the complaint as true and grant all reasonable inferences

in favor of the plaintiff.  *Crooks v. Lynch,* 557 F.3d 846, 848 (8th Cir. 2009).  Although a

complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Before analyzing the substantive state law claims, this Court must determine which state's law to apply. Plaintiff argues that Minnesota law should apply. In his filings for the motion to transfer, Defendant argues that either Alaska or Washington law should apply. In his filings for the motion to dismiss, Defendant recites the elements for both Alaska and Minnesota law. Both parties concede that the choice of law will not affect the outcome of the motion to dismiss.[1] Where a choice of law issue is not raised, "the federal court simply applies the law of the state in which the federal court sits." *BBSerCo, Inc. v. Metrix Co.,* 324 F.3d 955, 960 n. 3 (8th Cir. 2003) (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991)). Accordingly, this Court will apply Minnesota law in its analysis of the motion to dismiss.

### A. Misrepresentation—Count I

Defendant argues that Plaintiff has failed to state a claim for negligent or fraudulent misrepresentation.

---

[1]     Defendant's Motion to Dismiss Reply at 10 ("The choice-of-law issue, therefore, is not relevant to the outcome of this motion because Toomey has not met her burden, irrespective of which state's law is applied."); Plaintiff's Memorandum in Opposition to Motion to Dismiss at 12 ("At this preliminary stage of the litigation, the application of neither states' substantive law would be 'outcome determinative' precluding a claim.").

In Minnesota, the elements of negligent misrepresentation are: (1) the defendant supplied false information to another person to guide that person's own business transactions; (2) the defendant failed to use reasonable care in obtaining or communicating that information; (3) the plaintiff relied on the information; (4) the plaintiff was justified in relying on that information; and (5) the plaintiff was financially harmed as a result. *See Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 192 (Minn. 2012).

The complaint states that Defendant "represented to Toomey that if she would advance funds to help him pay business expenses, she would financially benefit by either being reimbursed in full or sharing in the profits earned from" his investments. Complaint ¶ 38. Toomey alleges that she relied on this representation, she had no reason to doubt Defendant's statements that she would financially benefit if she advanced funds and provided business management services, and she was harmed as a result. Toomey further alleges that "[i]t did not become apparent that defendant Dahl intended not to share in the profits of the Business Investments until early 2014 when Dahl refused to pay Toomey for her investments, both financial and through her labor." Complaint ¶ 44.

These allegations satisfy all the elements of negligent misrepresentation except the second one of negligence. The allegations lack any reference to the reasonableness of care by Defendant. Rather, the allegations expressly refer to his intention not to repay Toomey. On its face, the complaint does not allege negligent behavior.

To state a claim for intentional or fraudulent misrepresentation, a plaintiff must allege: (1) the defendant made a false representation about a past or present material fact that was susceptible of knowledge; (2) the defendant knew the representation was false or asserted it as its own knowledge without knowing whether it was true or false; (3) the defendant intended to

18

induce the plaintiff to act; (4) the plaintiff was induced to act in reliance on the representation; and (5) the plaintiff was damaged as a result.  *See M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992).  Furthermore, Rule 9(b) provides that fraud must be alleged with particularity.  Fed. R. Civ. P. 9(b).  To be sufficiently particular, the plaintiff must provide the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation."  *Parnes v. Gateway 2000, Inc*., 122 F.3d 539, 549 (8th Cir. 1997).

Nothing in Plaintiff's allegations state the time and place where Defendant represented that Plaintiff would be repaid or otherwise benefit if she managed his investments and advanced funds to cover Defendant's expenses.  It is plausible to infer from the allegations that the representations were made by Defendant in Washington sometime between 2003 and 2005. However, this broad level of specificity is insufficient to state a claim for fraudulent misrepresentation.

The complaint also alleges that "Dahl represented to Toomey that if she relocated to Washington to help him organize and manage the Business Investments and help him prepare his home for sale, he would move back to Minnesota where they would reside together and he would work from Minnesota."  *Id.* at ¶ 37.  With regard to this representation, Plaintiff fails to state a misrepresentation claim because it also lacks the requisite specificity and there is no allegation of harm to Plaintiff from Defendant's failure to move to Minnesota.

In conclusion, Plaintiff has failed to state a claim for either negligent or fraudulent misrepresentation.

## B.  Fiduciary Duty—Count II

To state a common law claim for breach of fiduciary duty, a plaintiff must plead "the existence of a fiduciary duty, breach, causation and damages." *Hot Stuff Foods, LLC v. Dornbach*, 726 F.Supp.2d 1038, 1043 (D. Minn. 2010) (citations omitted).

Plaintiff alleges that Defendant owed her a fiduciary duty because the "nature of the relationship between Toomey and defendant Dahl created an atmosphere of reliance and trust." Complaint ¶ 47.  In particular, he gave her an engagement ring and promised to marry her. *Id.* at ¶¶ 9, 40.

Minnesota common law has recognized a fiduciary-like relationship between married couples. *See Knox v. Knox,* 25 N.W.2d 225, 229 n. 2 (Minn. 1946) ("the relation between husband and wife, strictly speaking, is not fiduciary by virtue of the relation alone, nevertheless it is so highly confidential and justifiably subject to such great reliance that taking advantage of it produces in effect the same consequences as though it were truly fiduciary.")  Plaintiff argues that her engagement to Defendant creates a similar duty.  However, Plaintiff cites to no case law expanding the fiduciary-like duty of married couples to engaged couples.  Minnesota law has recognized a fiduciary duty between parties to an antenuptial agreement, *see In re Estate of Kinney*, 733 N.W.2d 118, 124 n.7 (Minn. 2007), but Plaintiff has not alleged that she and Defendant were parties to an antenuptial agreement.  Thus, Plaintiff has failed to state a claim for breach of fiduciary duty.

### C.  Breach of Contract—Count III

In Minnesota, the elements of a breach of contract claim are: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to the right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann,* 808 N.W.2d 828, 833 (Minn. 2011).

Plaintiff's breach of contract claim involves two different promises: one for the services she performed and the other for the funds she advanced.  More specifically, Plaintiff alleges that Defendant "extended an offer to Toomey that she would financially benefit if she aided him in the management" of his investments, Plaintiff accepted this offer, and Defendant breached this contract by failing to "repay[] her for all of her time and effort contributed toward" managing these investments.  Complaint ¶¶ 54, 55, 59.  She also alleges that a contract was formed based on Dahl's offer "that she would be repaid from the return received from the Business when she agreed to make financial contributions to prevent defaults and facilitate the success of the Business Investments" and she accepted that offer by subsequently advancing funds on several occasions.  *Id.* at ¶¶ 19-23.  Plaintiff alleges that Defendant breached this contract when he failed to repay her.  *Id.* at ¶ 60.

Regarding the promise to compensate Plaintiff for her services, there is no allegation that the parties ever agreed on how much she would benefit financially or when and in what form. Plaintiff has alleged in vague terms that Defendant promised she would "financially benefit." Without more, Plaintiff has not adequately pled the terms of the offer that was made with regard to Plaintiff's business management services.  *See Johnson v. Homeownership Preservation Foundation,* No. 09-cv-600, 2009 WL 6067018, at *7 (D.Minn. Dec. 18, 2009) *report and recommendation adopted,* 2010 WL 1050333 (D.Minn. Mar. 18, 2010) (no breach of contract claim stated where the plaintiff did "not set forth the terms of any offer made . . . , much less who made the offer or when and how it was communicated to her").

The allegations involving the promise for repayment of advanced funds are more specific.  Plaintiff alleges that Defendant promised to repay funds that she advanced to the business, and she provides specific dates, amounts, and purposes for some of the advances.  For

example, Plaintiff alleges:  "On March 2, 2005, March 16, 2005 and August 10, 2006 when Dahl

was short on funds, Toomey advanced $1,415.43 on each of these dates to pay on the loan

between Dahl and Olympic Coast Investment, Inc. related to a timber purchase in Alaska."

Complaint ¶ 20.  Under the facts alleged, it is plausible that Defendant's alleged promise

amounted to a standing offer to repay any funds advanced by Plaintiff, Plaintiff accepted this

offer each time she advanced funds, and Defendant breached his contractual duty by not

repaying Plaintiff.

In conclusion, this Court finds that Plaintiff has stated a breach of contract claim with

respect to the funds she advanced for Defendant but not with respect to the services she

performed for Defendant.

### D.  Promissory Estoppel—Count IV

To state a claim for promissory estoppel, the Complaint must allege that: (1) a clear and

definite promise was made; (2) the promisor intended to induce reliance and the promisee in fact

relied to his or her detriment; and (3) the promise must be enforced to prevent injustice. *Martens

v. Minn. Min. & Mfg. Co.,* 616 N.W.2d 732, 746 (Minn. 2000).

Promissory estoppel works to "imply a contract in law where none exists in

fact."  *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn. 1981).  Promissory

estoppel can provide an equitable fall back when the law prevents a plaintiff from prevailing on a

breach of contract claim.  *See InCompass IT, Inc. v. XO Communications Serv., Inc.*, 719 F.3d

891, 898 (8th Cir. 2013).   At the motion to dismiss stage, courts "routinely permit the assertion

of contract and quasi-contract claims together." *Cummins Law Office, P.A. v. Norman Graphic

Printing Co.,* 826 F.Supp.2d 1127, 1130 (D. Minn. 2011).

22

Plaintiff's promissory estoppel claim involves the same factual allegations as Plaintiff's breach of contract claim.  It too involves a claim that Plaintiff should be compensated for services she performed and for funds she advanced.  Complaint ¶¶ 63-68.  Like her breach of contract claim, with respect to her business management services, Plaintiff does not allege that the parties ever agreed how much she would benefit financially, when, and in what form.  Thus, Plaintiff has not alleged a clear and definite promise of compensation for her services as required to state a promissory estoppel claim.  However, also like her breach of contract claim, Plaintiff provides more specific allegations with regard to Defendant's promise to repay any funds she advanced.  The alleged specific promise to repay advanced funds is a clear and definite promise. Plaintiff's allegations that she relied on that promise and was harmed as a result are sufficient to state a claim for promissory estoppel.

### E.  Unjust Enrichment—Count V

To state a claim for unjust enrichment in Minnesota, "the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  *Schumacher v. Schumacher,* 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).  "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  *First Nat'l Bank v. Ramier,* 311 N.W.2d 502, 504 (Minn. 1981).  "An action for unjust enrichment may be founded upon failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another."  *Holman v. CPT Corp.*, 457 N.W.2d 740, 745 (Minn. Ct. App. 1990) (citation omitted).

Like promissory estoppel, unjust enrichment is an equitable claim that "does not apply when there is an enforceable contract that is applicable." *Caldas v. Affordable Granite & Stone, Inc.,* 820 N.W.2d 826, 838 (Minn. 2012); *see also Motley v. Homecomings Fin., LLC,* 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (plaintiffs "may plead their unjust-enrichment claim in the alternative to their breach-of-contract claim without fear of dismissal").

However, unlike a promissory estoppel claim, an unjust enrichment claim does not require a clear and definite promise. A party is unjustly enriched when he knowingly receives something of value to which he is not entitled under circumstances that make it unjust for him to retain the benefit. *See Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 734 (8th Cir. 1995) (discussing Minnesota law allowing recovery for the value of services rendered less the benefits received by the plaintiff).

Plaintiff alleges that it would be unjust for Defendant not to compensate her for the services she performed. Complaint ¶ 73. In particular, Plaintiff alleges that she had "sophisticated business analysis and management skills" from her experience as a mortgage underwriter and she used those skills to manage Dahl's accounts with Dahl's consent. Complaint ¶¶ 13, 15. It is plausible to infer from the allegations that Defendant was unjustly enriched when he knowingly received the benefit of Defendant's services and retained that benefit without paying her.

Plaintiff also alleges that Defendant was unjustly enriched by her "financial contributions" to Defendant's business. Complaint ¶ 70. Plaintiff's advances were valuable because they enabled Defendant's business to stay afloat and enabled Defendant to continue to make business deals. *Id.* at ¶¶ 19-25. The allegations plausibly suggest that Defendant should have known that Plaintiff expected to be repaid, and it would be unjust for him to keep the funds.

Accordingly, this Court finds that Plaintiff has stated a claim for unjust enrichment with respect to the services she performed and with respect to the funds she advanced for Defendant.

### F. Conversion—Count VI

A claim for conversion requires two elements: (1) that plaintiff has a property interest in some property; and (2) that defendant deprives the plaintiff owner of that interest. *Lassen v. First Bank Eden Prairie,* 514 N.W.2d 831, 838 (Minn. Ct. App. 1994).

Plaintiff alleges "Defendant has kept and converted for his own use and personal benefit all of the moneys advanced for his benefit from plaintiff Toomey." Complaint ¶ 79. Under Minnesota law, money is a valid basis for a conversion action. *See Cummins Law Office, P.A. v. Norman Graphic Printing Co.,* 826 F.Supp.2d 1127, 1133 (D. Minn. 2011) (surveying Minnesota case law and locating several cases recognizing claims for conversion of money). Plaintiff's allegations plausibly suggest that Plaintiff had a property interest in her money, and Defendant deprived her of that interest when he accepted and failed to repay her advanced funds. Thus, Plaintiff has stated a claim for conversion.

### CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion to Transfer/Change Venue [Docket No. 3] is DENIED.

2. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 14] is DENIED.

3. Defendant's Motion to Dismiss for Failure to State a Claim [Docket No. 14] is GRANTED IN PART and DENIED IN PART as follows:

a.  As to Counts One and Two (misrepresentation and breach of fiduciary duty), the motion is GRANTED and the claims DISMISSED.

b.  As to Counts Three and Four (breach of contract and promissory estoppel), the motion is GRANTED with respect to Defendant's promise to compensate Plaintiff for the services she performed, and DENIED with respect to Defendant's promise to repay Plaintiff for the funds she advanced.

c.  As to Counts Five and Six (unjust enrichment and conversion), the motion is DENIED.

Dated:  October 30, 2014

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge